CHARLES T. WRIGHT, ESQ.
Nevada Bar No. 10285
PIET & WRIGHT
3130 S. Rainbow Blvd., Ste. 304
Las Vegas, Nevada 89146
*Attorney for Debtor*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

In re:

SCHANTZ, LANCE EDWARD

Debtor(s),

CASE NO.: BK-S 09-14380-LBR
IN CHAPTER 13 PROCEEDINGS

MOTION TO VALUE COLLATERAL

Hearing Date: September 10, 2009
Hearing Time: 3:30 P.M.

<u>MOTION TO VALUE COLLATERAL, "STRIP OFF" AND MODIFY RIGHTS OF BANK OF AMERICA (ACCT. ENDING IN 5799) AND BENEFICIAL/HFC (ACCT. ENDING IN 3786) PURSUANT TO 11 U.S.C. 506(a) AND 1322</u>

COME NOW, EMERSON DALE SMOCK AND CHRISTINA SMOCK, (hereinafter the "Debtor"), by the law firm of PIET & WRIGHT, L.L.C., and attorney Charles T. Wright, Esq., and moves this Court pursuant to 11 U.S.C. §506(a), and §1322, and Bankruptcy Rules 3012 and 9014 and states:

1.  Debtor filed the instant Chapter 13, Case Number 09-14380-LBR on March 27, 2009.

2.  On the Petition date, Debtor owned real property located at 6661 BUBBLING BROOK DRIVE, LAS VEGAS, NEVADA 89107 (hereinafter the "Subject Property").

3.  The value of the Subject Property was $45,000.00 at the time the instant petition was filed.

1

4. At the time of filing the instant petition, the Subject Property was subject to a priority lien held by WELLS FARGO HOME MORTGAGE (ACCT. ENDING IN 6635) in an amount of $141,564.00.

5. Therefore, on the date the instant bankruptcy was filed, no equity existed in the Subject Property above the claim of WELLS FARGO HOME MORTGAGE (ACCT. ENDING IN 6635).

6. BANK OF AMERICA (ACCT. ENDING IN 5799)'s claim in the amount of $12,506.00 was wholly unsecured on the petition date and if Subject Property was sold at auction BANK OF AMERICA (ACCT. ENDING IN 5799) would receive nothing.

7. BENEFICIAL/HFC (ACCT. ENDING IN 3786)'s claim in the amount of $19,227.00 was wholly unsecured on the petition date and if Subject Property was sold at auction BENEFICIAL/HFC (ACCT. ENDING IN 3786) would receive nothing.

8. Accordingly, the Debtor request that Your Honor find that BANK OF AMERICA (ACCT. ENDING IN 5799)'s claim in the amount of $12,506.00 is unsecured and should be reclassified as a general unsecured claim to receive pro rata with other general unsecured creditors through the Debtor's Chapter 13 Plan.

9. Accordingly, the Debtor request that Your Honor find that BENEFICIAL/HFC (ACCT. ENDING IN 3786)'s claim in the amount of $19,227.00 is unsecured and should be reclassified as a general unsecured claim to receive pro rata with other general unsecured creditors through the Debtor's Chapter 13 Plan.

## LEGAL ARGUMENT

In *In re Zimmer*, 313 F.3d 1220 (9th Cir. 2002), the Court stated that a wholly unsecured lien holder's claim can be modified and reclassified as a general

unsecured claim pursuant to 11 U.S.C. §506(a), despite the anti-modification language in § 1322(b)(2). Specifically, the Court held:

> Section 506(a) divides creditors' claims into "secured...claims" and "unsecured claims." Although the conventional interpretation of "secured" night include any claim in which the creditor has a security interest in the Debtors' property, § 506(a) makes clear that the status of a claim depends on the valuation of the property. An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim
>
> To put it more simply, a claim such as a mortgage is not a "secured claim" to the extent that it exceeds the value of the property that secures it. Under the Bankruptcy Code, "secured claim" is thus a term of art; not every claim that is secured by a lien on property will be considered a "secured claim." Here, it is plain that PSB Lending's claim for the repayment of its loan is an unsecured claim, because its deed of trust is junior to the first deed of trust, and the value of the loan secured by the first deed of trust is greater than the value of the house.

Accordingly, since BANK OF AMERICA (ACCT. ENDING IN 5799)'s claim in the amount of $12,506.00 is wholly unsecured (in that there is no extant equity above the first mortgage in the Subject Property), Your Honor should reclassify BANK OF AMERICA (ACCT. ENDING IN 5799)'s claim in the amount of $12,506.00 to a general unsecured claim to be receive pro rata with like unsecured creditors.  BANK OF AMERICA (ACCT. ENDING IN 5799) should also be stripped of its secured rights under State law since no maintainable security interest in the subject property exists.

Accordingly, since BENEFICIAL/HFC (ACCT. ENDING IN 3786)'s claim in the amount of $19,227.00 is wholly unsecured (in that there is no extant equity above the first mortgage in the Subject Property), Your Honor should reclassify BENEFICIAL/HFC (ACCT. ENDING IN 3786)'s claim in the amount of $19,227.00 to a general unsecured claim to be receive pro rata with like unsecured creditors.

3

BENFEFICIAL/HFC (ACCT. ENDING IN 3786) should also be stripped of its secured rights under State law since no maintainable security interest in the subject property exists.

Further, the Debtor is not required to file an adversary proceeding to achieve the requested relief herein. Debtor may bring a motion to "strip off" BANK OF AMERICA (ACCT. ENDING IN 5799)'s and BENEFICIAL/HFC (ACCT. ENDING IN 3786) consensual liens by motion. *See In re Williams*, 166 B.R. 615 (Bankr.E.D.Va.1994), *In re Fuller*, 255 B.R. 300 (Bankr.W.D.Mich.2000), *In re Hoskins*, 262 B.R. 693 (Bankr.E.D.Mich.2001), *In re King*, 290 B.R. 641 (Bankr.C.D.Ill.2003), *In re Millspaugh*, 302 B.R. 90 (Bankr.D.Idaho 2003), *Dickey v. Ben. Fin. (In re Dickey)* 293 B.R. 360 (Bankr.M.D.Pa.2003), *In re Hill*, 304 B.R. 800 (Bankr.S.D.Ohio 2003); *In re Sadala* 294 B.R. 180 (Bankr.M.D.Fla.2003), *In re Fisher*, 289 B.R. 544 (Bankr.W.D.N.Y.2003), *In re Robert*, 313 B.R. 545 *(Bankr.N.D.N.Y2004), In re Bennett*, 312 B.R. 843 (Bankr.W.D.Ky.2004).

WHEREFORE, Debtor prays that this court:

1. Find that BANK OF AMERICA (ACCT. ENDING IN 5799) is not a holder of a lien on the Subject Property;

2. Find the BENEFICIAL/HFC (ACCT. ENDING IN 3786) is not a holder of a lien on the Subject Property.

3. Immediately avoid: "Strip off", cancel and extinguish BANK OF AMERICA (ACCT. ENDING IN 5799)'s wholly unsecured claim/lien in the amount of $12,506.00 from the Subject Property pursuant to 11 U.S.C. Section 506(a);

4. Immediately avoid: "Strip off", cancel and extinguish BENEFCIAL/HFC (ACCT. ENDING IN 3786)'s wholly unsecured claim/lien in the amount of $19,227.00 from the Subject Property pursuant to 11 U.S.C. Section 506(a);

     5.    Reclassify BANK OF AMERICA (ACCT. ENDING IN 5799)'s claim in the amount of $12,506.00 as general unsecured claim to be paid pro rata with other general unsecured creditors through the Debtor's Chapter 13 Plan;

     6.    Reclassify BENEFICIAL/HFC (ACCT. ENDING IN 3786)'s claim in the amount of $19,227.00 as general unsecured claim to be paid pro rata with other general unsecured creditors through the Debtor's Chapter 13 Plan;

     7.    Such other relief the Court finds appropriate.

DATED this 28th day of July, 2009.

Respectfully submitted,

PIET & WRIGHT

By: /s/ Charles T. Wright
CHARLES T. WRIGHT, ESQ.
Nevada Bar No. 10285
3130 S. Rainbow Blvd., Ste. 304
Las Vegas, Nevada 89146
*Attorney for Debtor*

B6A (Official Form 6A) (12/07)

In re     **Lance Edward Schantz**                                              Case No.    **09-14380**
                                                       Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| Condo, 2 bedroom, 1.5 baths, 924sqft<br>6661 Bubbling Brook Drive<br>Las Vegas, NV 89107 | | - | 45,000.00 | 173,297.00 |

                                                                                           Sub-Total >      45,000.00      (Total of this page)

                                                                                                Total >      45,000.00

   **0**    continuation sheets attached to the Schedule of Real Property                  (Report also on Summary of Schedules)

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                          Best Case Bankruptcy

B6D (Official Form 6D) (12/07)

In re   **Lance Edward Schantz**                                              ,     Case No.   __09-14380__
                                    Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.
   List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.
   If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".
   If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)
   Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.
☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community H / W / J / C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. **xxxxxxxxxx5799** <br><br> **Bank Of America** <br> Attn: Bankruptcy NC4-105-02-77 <br> Po Box 26012 <br> Greensboro, NC 27410 | | - | Opened 7/01/06 Last Active 2/11/09 <br><br> Condo, 2 bedroom, 1.5 baths, 924sqft <br> 6661 Bubbling Brook Drive <br> Las Vegas, NV 89107 <br><br> Value $ 107,000.00 | | | | 12,506.00 | 12,506.00 |
| Account No. **xxxxxxxxxx3786** <br><br> **Beneficial/hfc** <br> Attn: Bankruptcy <br> 961 Weigel Dr <br> Elmhurst, IL 60126 | | - | Opened 7/01/07 Last Active 12/10/08 <br><br> Condo, 2 bedroom, 1.5 baths, 924sqft <br> 6661 Bubbling Brook Drive <br> Las Vegas, NV 89107 <br><br> Value $ 107,000.00 | | | | 19,227.00 | 19,227.00 |
| Account No. **xxxxxxxxxx6635** <br><br> **Wells Fargo Hm Mortgag** <br> Attention: Bankruptcy Department <br> MAC-X <br> 3476 Stateview Blvd <br> Fort Mill, SC 29715 | | - | Opened 8/01/05 Last Active 12/30/08 <br><br> Condo, 2 bedroom, 1.5 baths, 924sqft <br> 6661 Bubbling Brook Drive <br> Las Vegas, NV 89107 <br><br> Value $ 107,000.00 | | | | 141,564.00 | 34,564.00 |
| Account No. | | | <br><br><br><br> Value $ | | | | | |
| __0__ continuation sheets attached | | | Subtotal <br> (Total of this page) | | | | 173,297.00 | 66,297.00 |
| | | | Total <br> (Report on Summary of Schedules) | | | | 173,297.00 | 66,297.00 |

Vegas Valley Appraisals

File No. 434C6661
Case No.

## Individual Condominium Unit Appraisal Report

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

### SUBJECT

| | |
|---|---|
| Property Address | 6661 Bubbling Brook Drive    Unit # C    City Las Vegas    State NV    Zip Code 89107 |
| Borrower | Schantz    Owner of Public Record Schantz    County Clark |
| Legal Description | Westporter Homes Sub Plat Book 14 Page 81 Unit 39 Bldg 10 |
| Assessor's Parcel No. | 138-26-410-039    Tax Year 2009    R.E. Taxes $ 771.70 |
| Project Name | Westporter Homes    Phase # 1    Map Reference Metro Map 43-C4    Census Tract 0031.02 |
| Occupant | [X] Owner [ ] Tenant [ ] Vacant    Special Assessments $ N/A    HOA $ 140.00    [ ] per year [X] per month |
| Property Rights Appraised | [X] Fee Simple [ ] Leasehold [ ] Other (describe) |
| Assignment Type | [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) Marketing Purposes |
| Lender/Client | Piet & Wright    Address 509 South 7th Street, Las Vegas, NV 89101 |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No
Report data source(s) used, offerings price(s), and date(s). According to the Property Archive Information the subject property was not listed for sale in the last twelve months. / for sale on with a sale price of $

### CONTRACT

I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $    Date of Contract    Is the property seller the owner of public record? [ ] Yes [ ] No    Data Source(s) MLS, Tax Records
Is there any financial assistance (loan charges, sale concessions, gift or down payment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No
If Yes, report the total dollar amount and describe the items to be paid.

### NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | Condominium Unit Housing Trends | | | Condominium Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location | [ ] Urban [X] Suburban [ ] Rural | | Property Values | [ ] Increasing [ ] Stable [X] Declining | | PRICE | AGE | One-Unit | 70 % |
| Built-Up | [X] Over 75% [ ] 25-75% [ ] Under 25% | | Demand/Supply | [ ] Shortage [ ] In Balance [X] Over Supply | | $ (000) | (yrs) | 2-4 Unit | % |
| Growth | [ ] Rapid [ ] Stable [X] Slow | | Marketing Time | [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | | 25 Low | 20 | Multi-Family | 5 % |
| | | | | | | 100 High | 55 | Commercial | 5 % |
| | | | | | | 50 Pred. | 30-40 | Other | 20 % |

Neighborhood Boundaries The subject's market area is bounded to the North by Vegas Dr, to the East by Jones Blvd, to the South by Charleston Blvd and to the West by Durango Dr.

Neighborhood Description The subject neighborhood is comprised mostly of conforming tract style single family residences with average to good construction quality. Schools, shopping, parks and other support facilities are located nearby. Freeway access and major arterials are close and convenient. Major employment centers are located within a 25 mile radius from the subject. Average market appeal is noted due to the general condition and construction quality of homes as well as proximity to local area amenities.

Market Conditions (including support for the above conclusions) According to the latest report by University of Las Vegas Center for Business and Economic Research, "Locally, the consensus seems to be that an adjustment is taking place, but growth will continue to generate enough demand to forestall a major ubiquitous price decline in Clark County."

### PROJECT SITE

| | |
|---|---|
| Topography | Level Pad Above Street Grade    Size Typical/Irregular    Density 12 Units Per Acre    View Typical For Area |
| Specific Zoning Classification | R-PD12    Zoning Description Residential Planned Development |
| Zoning Compliance | [X] Legal [ ] Legal Nonconforming - Do the zoning regulations permit rebuilding to current density? [X] Yes [ ] No    [ ] No Zoning [ ] Illegal (describe) |

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements--Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | X | | Water | X | | Street Asphalt | | X |
| Gas | X | | Sanitary Sewer | X | | Alley | | X |

FEMA Special Flood Hazard Area [ ] Yes [X] No    FEMA Flood Zone X    FEMA Map # 32003C2165 E    FEMA Map Date 09/27/2002
Are the utilities and/or off-site improvements typical for the market area? [X] Yes [ ] No If No, describe.
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No If Yes, describe.
There are no adverse site conditions or external factors.

### PROJECT INFORMATION

Data source(s) for project information Tax Records, MLS, HOA
Project Description [ ] Detached [ ] Row or Townhouse [ ] Garden [X] Mid-Rise [ ] High-Rise [ ] Other (describe)

| General Description | General Description | Subject Phase | | If Project Completed | | If Project Incomplete | |
|---|---|---|---|---|---|---|---|
| # of Stories Two | Exterior Walls Frm. Stucco/Avg | # of Units | 212 | # of Phases | 1 | # of Planned Phases | N/A |
| # of Elevators None | Roof Surface C. Tile/Avg | # of Units Completed | 212 | # of Units | 212 | # of Planned Units | N/A |
| [X] Existing [ ] Proposed | Total # Parking 212 | # of Units For Sale | 8 | # of Units for Sale | 8 | # of Units for Sale | N/A |
| [ ] Under Construction | Ratio (spaces/units) 1:1 | # of Units Sold | 212 | # of Units Sold | 212 | # of Units Sold | N/A |
| Year Built 1974 | Type Garage | # of Units Rented | 12 | # of Units Rented | 12 | # of Units Rented | N/A |
| Effective Age 18 | Guest Parking Ample | # of Owner Occupied Units | 200 | # of Owner Occupied Units | 200 | # of Owner Occupied Units | N/A |

Project Primary Occupancy [X] Principal Residence [ ] Second Home or Recreational [ ] Tenant
Is the developer/builder in control of the Homeowners' Association (HOA)? [ ] Yes [X] No
Management Group - [X] Homeowners' Association [ ] Developer [ ] Management Agent - Provide name of management company.

Does any single entity (the same individual, investor group, corporation, etc.) own more than 10% of the total units in the project? [ ] Yes [X] No If Yes, describe

Was the project created by the conversion of an existing building(s) into a condominium? [ ] Yes [X] No If Yes, describe the original use and the date of conversion.

Are the units, common elements, and recreation facilities complete (including any planned rehabilitation for a condominium conversion)? [X] Yes [ ] No If No, describe

Is there any commercial space in the project? [ ] Yes [X] No If Yes, describe and indicate the overall percentage of the commercial space.

Freddie Mac Form 465    March 2005                                                Fannie Mae Form 1073    March 2005
Page 1 of 17

ClickFORMS Appraisal Software 800-622-8727

File No. 434C6661
Case No.

## Individual Condominium Unit Appraisal Report

**PROJECT INFORMATION**

Describe the condition of the project and quality of construction.
The subject property is in overall average condition, with no repairs evident at the time of inspection.

Describe the common elements and recreational facilities.   CC & R's, Clubhouse, Pool, Guest Park.

Are any common elements leased to or by the Homeowners' Association? [ ] Yes [X] No   If Yes, describe the rental terms and options.

Is the project subject to ground rent? [ ] Yes [X] No   If Yes, $_____ per year (describe terms and conditions)

Are the parking facilities adequate for the project size and type? [X] Yes [ ] No   If No, describe and comment on the effect on value and marketability.

**PROJECT ANALYSIS**

I [ ] did [X] did not analyze the condominium project budget for the current year. Explain the results of the analysis of the budget (adequacy of fees, reserves, etc.), or why the analysis was not performed. The data was not provided to the appraiser. Las Brisas HOA Phone # 702-870-6181

Are there any other fees (other than regular HOA charges) for the use of the project facilities? [ ] Yes [X] No   If Yes, report the charges and describe.

Compared to other competitive projects of similar quality and design, the subject unit charge appears [ ] High [X] Average [ ] Low   If High or Low, describe

Are there any special or unusual characteristics of the project (based on the condominium documents, HOA meetings, or other information) known to the appraiser?
[ ] Yes [X] No   If Yes, describe and explain the effect on value and marketability.

Unit Charge $ 140  per month X 12 = $ 1,680  per year.   Annual assessment charge per year per square feet of gross living area = $ 2
Utilities included in the unit monthly assessment [ ] None [ ] Heat [ ] Air Conditioning [ ] Electricity [ ] Gas [X] Water [X] Sewer [ ] Cable [ ] Other (describe)

**UNIT DESCRIPTION**

| General Description | Interior materials/condition | Amenities | Appliances | Car Storage |
|---|---|---|---|---|
| Floor # One | Floors Laminate Wood/ Carpet/Avg | [ ] Fireplace(s) # | [X] Refrigerator | [ ] None |
| # of Levels Two | Walls Drywall/Average | [ ] Woodstove(s) # | [X] Range/Oven | [X] Garage [ ] Covered [ ] Open |
| Heating Type F.A.U. Fuel Gas | Trim/Finish Standard/Average | [ ] Deck/Patio | [X] Disp [X] Microwave | # of Cars 1 Car |
| [ ] Central AC [X] Individual AC | Bath Wainscot Fiberglass/Avg | [X] Porch/Balcony | [X] Dishwasher | [X] Assigned [ ] Owned |
| [ ] Other (describe) | Doors Hollow Core/Avg | [ ] Other | [X] Washer/Dryer | Parking Space # N/A |

Finished area **above** grade contains:   4   Rooms   2   Bedrooms   1.50   Bath(s)   924   Square Feet of Gross Living Area Above Grade
Are the heating and cooling for the individual units separately metered? [X] Yes [ ] No   If No, describe and comment on compatibility to other projects in the market area.

Additional features (special energy efficient items, etc.)   None

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   The subject property is in overall average condition with no repairs evident at the time of inspection.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No   If Yes, describe
The appraiser only performed a visual inspection of accessible areas and that the appraisal cannot be relied upon to disclose conditions and/or defects in the property.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No   If No, describe

**PRIOR SALE HISTORY**

I [X] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s) MLS, Tax Records.
My research [X] did [ ] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s) MLS, Tax Records.
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No sale within 3 years | 07/25/2008 | No sale within 1 year | No sale within 1 year |
| Price of Prior Sale/Transfer | N/A | $78,366 FRCLSR | N/A | N/A |
| Data Source(s) | MLS, Tax Records | MLS, Tax Records | MLS, Tax Records | MLS, Tax Records |
| Effective Date of Data Source(s) | 05/02/2009 | 05/02/2009 | 05/02/2009 | 05/02/2009 |

Analysis of prior sale or transfer history of the subject property and comparable sales   The subject property is not known to have been sold or listed for sale within the previous three years. Comparable Sales No. 1 and 2 are similar units to the subject located within the subject development, while Comparable Sale No. 3 is a similar property located in a competing development within the subject's market area. All closed comparables are closed sales within the last six-months with the exception of Comparable Sale No. 4 which is currently listed for sale.

Vegas Valley Appraisals

File No. 434C6661
Case No.

## Individual Condominium Unit Appraisal Report

There are __4__ comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 50,000 to $ 90,000.
There are __7__ comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 35,000 to $ 75,000.

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address and Unit # | 6661 Bubbling Brook Drive, #C  Las Vegas, NV 89107 | 110 Panorama Drive, #D  Las Vegas, NV 89107 | | 230 Shadybrook Lane, #B  Las Vegas, NV 89107 | | 1109 Willow Tree Drive, #C  Las Vegas, NV 89128 | |
| Project Name and Phase | Westporter Homes  1 | Westporter Homes  1 | | Westporter Homes  1 | | Willow Tree  1 | |
| Proximity to Subject | | 0.04 miles S | | 0.09 miles NE | | 0.65 miles NW | |
| Sale Price | $ | | $ 55,000 | | $ 39,000 | | $ 62,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 56.82 sq. ft. | | $ 42.21 sq. ft. | | $ 59.05 sq. ft. | |
| Data Source(s) | | MLS#852326 Tax Records | | MLS#886341 Tax Records | | MLS#877044 Tax Records | |
| Verification Source(s) | | P.Recs. #20081209:03013 | | P.Recs. #20090130:05759 | | P.Recs. #20090130:04902 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing Concessions | | DOM - 56, Conv  Seller Contrib. | -7,000 | DOM - 36, Conv  Seller Contrib. | 0 | DOM - 41, Conv  Seller Contrib. | -2,000 |
| Date of Sale/Time | | | | | | | |
| Location | Average | Average | | Average | | Average | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| HOA Mo. Assessment | 140 | 140 | | 140 | | 138 | |
| Common Elements and Rec. Facilities | Pool, CC&R's  Guest Park | Pool, CC&R's  Guest Park | | Pool, CC&R's  Guest Park | | CC&R's | |
| Floor Location | Upper/Lower | Lower | | Upper/Lower | | Upper/Lower | |
| View | Typical For Area | Typical For Area | | Typical For Area | | Typical For Area | |
| Design (Style) | Condominium | Condominium | | Condominium | | Condominium | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 35 yrs | 35 yrs | | 35 yrs | | 28 yrs | -7,000 |
| Condition | Average | Average | | Average | | Average | |
| Above Grade Room Count | Total 4 / Bdrms 2 / Baths 1.50 | Total 4 / Bdrms 2 / Baths 1.50 | | Total 4 / Bdrms 2 / Baths 1.50 | | Total 4 / Bdrms 2 / Baths 1.50 | |
| Gross Living Area | 924 sq. ft. | 968 sq. ft. | 0 | 924 sq. ft. | 0 | 1,050 sq. ft. | -3,000 |
| Basement & Finished Rooms Below Grade | None | None | | None | | None | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA/Cent Ht/AC | FWA/Cent Ht/AC | | FWA/Cent Ht/AC | | FWA/Cent Ht/AC | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 1 Car Garage | 1 Car Garage | | 1 Car Garage | | 2 Car Garage | -5,000 |
| Porch/Patio/Deck | Ext. Amenities | Similar | | Similar | | Similar | |
| Com. Amenities | Com. Amenities | Similar | | Similar | | Similar | |
| Fireplaces | No Fireplace | No Fireplace | | No Fireplace | | No Fireplace | |
| Interior Upgrades | Upgrades | Similar | | Inferior | +3,000 | Similar | |
| Net Adjustment (Total) | | [ ] + [X] - | $ -7,000 | [X] + [ ] - | $ 3,000 | [ ] + [X] - | $ -17,000 |
| Adjusted Sale Price of Comparables | | Net Adj: -13%  Gross Adj: 13% | $ 48,000 | Net Adj: 8%  Gross Adj: 8% | $ 42,000 | Net Adj: -27%  Gross Adj: 27% | $ 45,000 |

Summary of Sales Comparison Analysis. All comparable sales used were chosen on the basis of their similarity to the subject property in terms of age, size, design, utility, and the overall character of the subject's market area. Equal emphasis is placed on all three comparables, which are similar to the subject property with regard to the most significant aspects. They provide substantial support to this analysis. After a thorough search of the general market area, all comparables used were considered to be the best available and were felt to provide a reliable indication of value. All of the Comparable Sales are located in the subject's competitive market area. Positive and negative adjustments of the Comparable Sales were required in areas of dissimilarity to produce the best indicated value of the subject. Subject competes well with similar sized and aged homes in this area. Adjustments were based on data extracted from the area market, conversations with builders, real estate agents, appraisers and other real estate professionals active in this market area, and are reflective of the probable actions of informed buyers. All adjustments, therefore, are based on the market's reaction to each individual item and not to actual cost.

Indicated Value by Sales Comparison Approach $ 45,000

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated monthly Market Rent $ __N/A__ X Gross Rent Multiplier __N/A__ =$ __N/A__ Indicated Value by Income Approach (optional)
Summary of Income Approach (including support for market rent and GRM). The subject property is located in an area of, primarily, owner occupied single family residences. For this reason, the Income Approach was not considered a meaningful approach to value and was, therefore, excluded from this analysis.

Indicated Value by: Sales Comparison Approach $ 45,000   Income Approach (if developed) $ N/A
Of all approaches considered, (Income Approach, and Sales Comparison Analysis), the latter (SCA) is considered the most reliable indicator of value, as it best reflects the actions of informed buyers and sellers in an open market.

This appraisal is made [X] "as is," [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair.  No Conditions

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 45,000       as of 05/06/2009       , which is the date of inspection and the effective date of this appraisal.

Vegas Valley Appraisals
**EXTRA COMPARABLES 4-5-6**

File No. 434C6661
Case No.

Borrower Schantz
Property Address 6661 Bubbling Brook Drive
City Las Vegas  County Clark  State NV  Zip Code 89107
Lender/Client Piet & Wright  Address 509 South 7th Street, Las Vegas, NV 89101

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address and Unit # | 6661 Bubbling Brook Drive, #C  Las Vegas, NV 89107 | 1121 Willow Tree Drive  Las Vegas, NV 89128 | | | | | |
| Project Name and Phase | Westporter Homes  1 | Willow Tree  1 | | | | | |
| Proximity to Subject | | 0.59 miles NW | | | | | |
| Sale Price | $ | $ 69,900 | | $ | | $ | |
| Sale Price/Gross Liv. Area | $ 0.00  sq. ft. | $ 59.44  sq. ft. | | $  sq. ft. | | $  sq. ft. | |
| Data Source(s) | | MLS#898723 | | | | | |
| Verification Source(s) | | Listed on 12/31/2008 | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing Concessions | | DOM - 126  LP/SP | -3,500 | | | | |
| Date of Sale/Time | | Listed for Sale | | | | | |
| Location | Average | Average | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| HOA Mo. Assessment | 140 | 138 | | | | | |
| Common Elements and Rec. Facilities | Pool, CC&R's  Guest Park | CC&R's | | | | | |
| Floor Location | Upper/Lower | Lower | | | | | |
| View | Typical For Area | Typical For Area | | | | | |
| Design (Style) | Condominium | Condominium | | | | | |
| Quality of Construction | Average | Average | | | | | |
| Actual Age | 35 yrs | 28 yrs | -7,000 | | | | |
| Condition | Average | Average | | | | | |
| Above Grade Room Count | Total 4 / Bdrms 2 / Baths 1.50 | Total 5 / Bdrms 3 / Baths 1.50 | -2,000 | Total / Bdrms / Baths | | Total / Bdrms / Baths | |
| Gross Living Area | 924 sq. ft. | 1,176 sq. ft. | -5,000 | sq. ft. | | sq. ft. | |
| Basement & Finished Rooms Below Grade | None | None | | | | | |
| Functional Utility | Average | Average | | | | | |
| Heating/Cooling | FWA/Cent Ht/AC | FWA/Cent Ht/AC | | | | | |
| Energy Efficient Items | Standard | None | | | | | |
| Garage/Carport | 1 Car Garage | 2 Car Garage | -5,000 | | | | |
| Porch/Patio/Deck | Ext. Amenities | Similar | | | | | |
| Com. Amenities | Com. Amenities | Similar | | | | | |
| Fireplaces | No Fireplace | No Fireplace | | | | | |
| Interior Upgrades | Upgrades | Similar | | | | | |
| Net Adjustment (Total) | | [ ]+ [X]- | $ -22,500 | [ ]+ [ ]- | $ 0 | [ ]+ [ ]- | $ 0 |
| Adjusted Sale Price of Comparables | | Net Adj: -32%  Gross Adj : 32% | $ 47,400 | Net Adj: 0%  Gross Adj: 0% | $ 0 | Net Adj: 0%  Gross Adj: 0% | $ 0 |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No sale within 3 years | Listed for Sale | | |
| Price of Prior Sale/Transfer | N/A | N/A | | |
| Data Source(s) | MLS, Tax Records | MLS, Tax Records | | |
| Effective Date of Data Source(s) | 05/02/2009 | 05/02/2009 | | |

Summary of Sales Comparison Analysis. Comparable Sale No. 4 is a similar property to the subject and it was added as a supplemental data in support of the final value conclusion.

Vegas Valley Appraisals
## COMMENT ADDENDUM

File No.  434C6661
Case No.

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | Schantz | | | | | |
| Property Address | 6661 Bubbling Brook Drive | | | | | |
| City  Las Vegas | County | Clark | State | NV | Zip Code | 89107 |
| Lender/Client  Piet & Wright | | Address  509 South 7th Street, Las Vegas, NV 89101 | | | | |

LITIGATION NOTE: The appraiser could not verify if the subject's development has any litigation. However, in case litigation exists, it does not have any impact on the final value conclusion. as the subject was appraised to market value as illustrated by the Comparable Sales located in the same development.

NOTE: The subject property backs on I-95 Freeway which is a major thoroughfare artery. External obsolence may or may not exist. The appraisal report was developed under the extraordinary assumption that the condition does not exist. In the event that the condition exist, a noise study is recommended.

Comparable Adjustment Analysis

Financial Concessions: Financial Concessions in the form of seller points paid have been adjusted accordingly.

Age: The differences in age between the comparable sales and the subject property were adjusted at $1,000 per year, based on actual age. The amount adjusted was based on the reaction of typically informed buyers.

Bedroom Count: The difference in bedroom counts was adjusted at $2,000 between two and three-bedrooms. The amount adjusted is consistent with the thinking of informed purchasers.

Gross Living Area: The differences in Gross Living Area between the comparable sales and the subject property were adjusted at a rate of $20.00 per square foot, beginning at a difference of one hundred square feet, then rounded to the most appropriate whole number. The amount adjusted per square foot, as noted above, represents the market's reaction to homes of this quality.

Parking Facilities: Current sales data, within the subject property's market area, indicate market acceptance of car storage as follows: $5,000 per garage space. This figure was applied to the comparable sales based on their car storage amenities as they compare to those of the subject.

Interior Upgrades: The subject property features upgraded amenities (see Upgraded Features section in the attached Addendum). Comparable Sale No. 2 was considered inferior with regard to laminate wood flooring. The amount adjusted was based on the reaction of a typically informed buyer in the resale market, and is not based on actual cost.


UPGRADED FEATURES

Exterior:
Common Amenities, Porch.

Interior
Laminate Wood Flooring, Three Ceiling Fans, Cultured Marble Bathroom Countertops, Mirrored Wardrobe Doors.

Vegas Valley Appraisals

**Individual Condominium Unit Appraisal Report**   File No. 434C6661   Case No.

This report form is designed to report an appraisal of a unit in a condominium project or a condominium unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject unit, (2) inspect and analyze the condominium project, (3) inspect the neighborhood, (4) inspect each of the comparable sales from at least the street, (5) research, verify, and analyze data from reliable public and/or private sources, and (6) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Vegas Valley Appraisals

**Individual Condominium Unit Appraisal Report**

File No. 434C6661
Case No.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Michael O'Connor | Name |
| Company Name Vegas Valley Appraisals | Company Name |
| Company Address 2634 Cimarron Cove Ct, Las Vegas, NV 89156 | Company Address |
| Telephone Number Tel:(702) 459-6655  Fax:(702) 459-2755 | Telephone Number |
| Email Address vegasvalleyappraisals@cox.net | Email Address |
| Date of Signature and Report 05/07/2009 | Date of Signature |
| Effective Date of Appraisal 05/06/2009 | State Certification # |
| State Certification # | or State License # |
| or State License # A.0006146-RES | State |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License |
| State  NV | |
| Expiration Date of Certification or License 09/30/2009 | |

ADDRESS OF PROPERTY APPRAISED
6661 Bubbling Brook Drive
Las Vegas, NV 89107

APPRAISED VALUE OF SUBJECT PROPERTY $ 45,000

LENDER/CLIENT
Name
Company Name Piet & Wright
Company Address 509 South 7th Street
Las Vegas, NV 89101
Email Address

SUBJECT PROPERTY
[ ] Did not inspect subject property
[ ] Did inspect exterior of subject property from street
    Date of Inspection
[ ] Did inspect interior and exterior of subject property
    Date of Inspection

COMPARABLE SALES
[ ] Did not inspect exterior of comparable sales from street
[ ] Did inspect exterior of comparable sales from street
    Date of Inspection

Freddie Mac Form 465 March 2005          ClickFORMS Appraisal Software 800-622-8727          Fannie Mae Form 1073 March 2005
Page 8 of 17

Vegas Valley Appraisals
## SKETCH ADDENDUM

| | | | | | File No. | 434C6661 |
| | | | | | Case No. | |

| Borrower | Schantz | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 6661 Bubbling Brook Drive | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code | 89107 |
| Lender/Client | Piet & Wright | | Address | 509 South 7th Street, Las Vegas, NV 89101 | | |



| SKETCH CALCULATIONS | Perimeter | Area |
|---|---|---|
| **Living Area** | | |
| First Floor | | 462.0 |
| Second Floor | | 462.0 |
| Total Living Area | | **924.0** |
| **Garage Area** | | |
| Detached Garage | | 189.0 |
| Total Garage Area | | **189.0** |
| **Porch Area** | | |
| Porch | | 232.0 |
| Total Porch Area | | **232.0** |

ClickFORMS Appraisal Software 800-622-8727    Page 9 of 17

Vegas Valley Appraisals
**LOCATION MAP ADDENDUM**
File No. 434C6661
Case No.

| | | | | |
|---|---|---|---|---|
| Borrower | Schantz | | | |
| Property Address | 6661 Bubbling Brook Drive | | | |
| City Las Vegas | County Clark | State NV | Zip Code 89107 | |
| Lender/Client Piet & Wright | | Address 509 South 7th Street, Las Vegas, NV 89101 | | |



Vegas Valley Appraisals
## PLAT MAP

File No. 434C6661
Case No.

| Borrower | Schantz | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 6661 Bubbling Brook Drive | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code 89107 |
| Lender/Client | Piet & Wright | | Address | 509 South 7th Street, Las Vegas, NV 89101 | | |



ClickFORMS Appraisal Software 800-622-8727    Page 11 of 17